R.A. v V.A. (2024 NY Slip Op 24046)

[*1]

R.A. v V.A.

2024 NY Slip Op 24046

Decided on February 20, 2024

Supreme Court, Westchester County

Grossman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 20, 2024
Supreme Court, Westchester County

R.A., Plaintiff,

against
V.A., Defendant.

Index No. XXXXX

Victor G. Grossman, J.

The following papers numbered 1 to 3 were read on the application of Attorney BB to vacate this Court's order appointing the attorney as counsel for the Defendant herein:
Order to Show Cause — Affirmation / Exhibits 1-2
Affidavit 3
Upon the foregoing papers it is ORDERED that the application is disposed of as follows:
This contested matrimonial action was commenced on January 30, 2023. Defendant V.A. answered pro se, but subsequently retained Attorney BB on March 28, 2023. Plaintiff R.A. thereafter retained the C.D. law firm to represent her on or about June 19, 2023. The case was certified ready for trial on August 18, 2023, and a Note of Issue was filed on August 28, 2023. On September 11, 2023, the C.D. firm applied by order to show cause to withdraw as attorney for the Plaintiff R.A.. No decision on this application is filed on the electronic docket of the case, but Plaintiff R.A. thereafter appeared pro se. On October 20, 2023, Attorney BB and V.A. executed a "Consent to Change Attorney" whereby V.A. pro se was substituted as attorney for the Defendant, and the document was filed on November 3, 2023. On or about December 5, 2023, Defendant V.A. applied for poor person relief and appointment of counsel. By order dated January 25, 2024, this Court granted the application and appointed Attorney BB pursuant to the 9th Judicial District program for assignment of pro bono counsel to indigent persons in matrimonial cases. 
Attorney BB now moves to vacate the order of appointment, asserting that it is barred by Rule 1.7(a)(2) of the Rules of Professional Conduct, which provides in pertinent part:
(a) . . . a lawyer shall not represent a client if a reasonable lawyer would conclude that. . .
(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.
Attorney BB proffers account statements showing that over the course of the seven-month representation, Attorney BB billed Defendant V.A. for legal services in the amount of $61,556.29, more than 90% of which was incurred in the four-month period from May 1, 2023 to August 31, 2023; that Defendant V.A. paid the sum of $21,800; and that the balance of $39,756.29 remains outstanding. Attorney BB asserts that the outstanding indebtedness, coupled with non-payment for the assigned pro bono representation going forward, will undermine Attorney BB's ability to zealously represent Defendant. Defendant V.A. avers that he does not object to reassignment of counsel, but neither has he objected to Attorney BB's appointment.
Attorney BB's claim is without merit in law.
First, a client's indebtedness to a lawyer for legal fees is not the type of financial, business or property interest implicated by Rule 1.7(a)(2). Addressing the prior ethical rule (Code of Professional Responsibility DR5-101), the Court of Appeals in Greene v. Greene, 47 NY2d 447 (1979) wrote:
It is a long-standing precept of the legal profession that an attorney is duty bound to pursue his client's interests diligently and vigorously within the limits of the law (Code of Professional Responsibility, canon 7). For this reason, a lawyer may not undertake representation where his independent professional judgment is likely to be impaired by extraneous considerations. Thus, attorneys historically have been strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests [cit.om.]. . .
Perhaps the clearest instance of impermissible conflict occurs when a lawyer represents two adverse parties in a legal proceeding. . . .
By the same token, where it is the lawyer who possesses a personal, business or financial interest at odds with that of his client, these prohibitions apply with equal force (Code of Professional Responsibility, DR 5-101, subd [A]). Viewed from the standpoint of a client, as well as that of society, it would be egregious to permit an attorney to act on behalf of the client in an action where the attorney has a direct interest in the subject matter of the suit. As in the dual representation situation, the conflict is too substantial, and the possibility of adverse impact upon the client and the adversary system too great, to allow the representation. In short, a lawyer who possesses a financial interest in a lawsuit akin to that of a defendant may not, as a general rule, represent the plaintiff in the same action.
Id., 47 NY2d at 451-452. 
Thus, it is a financial interest in the subject matter of the lawsuit conflicting with that of the client that triggers disqualification. See, Greene v. Greene, supra. That mere indebtedness for attorney's fees is not such an interest is evident from Rule 1.16 of the Rules of Professional Responsibility, which expressly authorizes a court to order continuing representation despite nonpayment of the attorney's fees. Under subdivision (c)(5) thereof, a client's "deliberately disregard[ing] an agreement or obligation to the lawyer as to expenses or fees" constitutes good cause for permissive (i.e., not mandatory) withdrawal from a representation "[e]xcept as stated in [*2]paragraph (d)," which provides that "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." See, Rules of Professional Responsibility, Rule 1.16, subd. (c)(5), (d). In view of Rule 1.16, it simply cannot be maintained that this Court's order of appointment is barred by Rule 1.7(a)(2) of the Rules of Professional Conduct in the circumstances of this case.
Second, given attorneys' ethical obligation to represent indigent litigants upon appointment by the court, it cannot be maintained that requiring pro bono service without compensation is per se violative of the attorney's obligation to advocate zealously for the interests of the client. In upholding the constitutionality of the 9th Judicial District program for assignment of pro bono counsel to indigent litigants in matrimonial cases, this Court in
Y.H. v. E.S., 76 Misc 3d 398 (Sup. Ct. Putnam Co. 2022) observed:
Where there is no statutory mechanism for compensation of assigned counsel, New York courts have historically assigned counsel in appropriate cases to serve without compensation in reliance on the longstanding professional obligation of the Bar to the poor.
Inherent in the courts and historically associated with the duty of the Bar to pro-vide uncompensated services for the indigent has been the discretionary power of the courts to assign counsel in a proper case to represent private indigent litigants. Such counsel serve without compensation. Statutes codify the inherent power of the courts (CPLR 1102, subd. [a]. . . ). . .
. . . The courts have a broad discretionary power to assign counsel without compen-sation in a proper case (CPLR 1102, subd. [a]. . . ). Voluntary organizations and Federally-funded programs play their role. As for the Bar they follow, as they are obliged to do, the canons of their profession in performing obligations to the indigent and duties imposed by assignment of the courts. If more is required, the relief must be provided by the Legislature. . . .
In re Smiley, supra, 36 NY2d at 438, 441.
Absent statutory authority for the payment of assigned counsel in matrimonial actions and the appropriation of funds to implement such authority, counsel must be provided by the Bar through the personal obligation of its members, tradi- tionally recognized, to willingly accept assignments made by the Bench to help those who cannot afford financially to help themselves.
Jacox v. Jacox, supra, 43 AD2d at 717. See also, Matter of Enrique R., supra, 126 AD2d at 175(quoting Jacox); Farrell v. Farrell, supra, 55 AD2d at 586 (quoting Jacox and recognizing need "for the Bar, as of old, to fulfill its longtime duty").
There has been no time in the governmental history of this State when the court lacked power to assign counsel for the defense of indigent persons charged with crime [cit.om.]; and it has been part of the obligation assumed by counsel upon their admission to the bar to defend poor prisoners upon assignment by the court. Until the passage of the statute now under consideration, such service was rendered by counsel so assigned without pecuniary compensation, and such service, however onerous, created no legal liability against the county in favor of the person rendering the same.
People ex rel. Acritelli v. Grout, 87 AD 193, 195-196 (1st Dept. 1903), aff'd 177 NY 587 (1904).
[A]t common law, attorneys were obligated to represent indigent parties without [*3]compensation (People ex rel. Acritelli v. Grout, 87 App.Div. 193, 196. . . , aff'd 177 NY 587. . . ; People v. Fernandez, 202 Misc. 190. . . ; People v. Marx, 10 Misc 2d 1053. . . ).
In re Guardianship of Mark V., 80 Misc 2d 986, 990 (Surr. Ct. Nassau Co. 1975).
From very early times, the performance of gratuitous service for the poor has been regarded as part of the obligation assumed by counsel upon his admission to the Bar.
People v. Marx, 10 Misc 2d 1053, 1057 (County Ct. Queens Co. 1957).
Contrary to the movant's assertion, then, there is ample basis in New York law for the assignment of counsel on a pro bono basis for indigent parties in matrimonial actions. . . .
Y.H. v. E.S., supra, 398 Misc 3d at 403-405. 
Attorney BB has not challenged the constitutionality of the order of assignment, and in view of Attorney BB's ethical obligation to undertake pro bono representation at the instance of the Court, the conclusory assertion that Attorney BB cannot provide zealous representation due to her firm's "already heavy trial and litigation calendar" is wholly unavailing. As this Court pointed out in Y.H. v. E.S., supra:
Complex matrimonial litigation requiring the substantial investment of a lawyer's time and labor generally involves disputes over assets or child custody. If his indigent client's adversary has assets, then there is a potential source of funds for payment of the movant's attorney's fees via an award pursuant to DRL §237, or pursuant to CPLR §1102(d) from his own client's equitable distribution award...The point is that the very circumstances giving rise to time-consuming matrimonial litigation carry with them the potential for payment of the movant's attorney's fees. Conversely, in the absence of those complicating circumstances the movant's task should be simpler and the pro bono assignment considerably less burdensome. If in such cases there is no ready source of funds for payment of attorney's fees, neither is there a prospect that a substantial commitment of the movant's time and labor will be required.
Id., 76 Misc 3d at 425.
Finally, and as a purely prudential matter, Attorney BB is already familiar with this matrimonial proceeding from the prior involvement therein and has been paid nearly $22,000. Were the Court to discharge Attorney BB and reassign the case, a new attorney would face a much greater burden starting from scratch without any compensation. The circumstances present here warrant no such result.
It is therefore
ORDERED, that the application to vacate this Court's order of appointment dated January 25, 2024 is denied.
The foregoing constitutes the decision and order of the Court.
Dated: February 20, 2024
Carmel, New York
ENTER
HON. VICTOR G. GROSSMAN, J.S.C.